UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | CASE NO. 1:15 cr 79 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | <u>OPINION AND ORDER</u> |
| ) | |
| **JORDON LOUIS DONGARRA,** ) | |
| ) | |
| Defendant. ) | |

This case is before the Court on Defendant Jordon Dongarra's Motion to Sever Counts One and Two from Counts Three and Four.  (**Doc #: 28**.)   Dongarra has been charged in a single indictment with committing two armed bank robberies within a period of 12 days in December 2014.  He now asks the Court to sever the trial of the two robberies due to unfair prejudice.  For the following reasons, the Court **DENIES** the Motion.

**I.**

Jordon Dongarra is charged in a second superseding indictment with committing two bank robberies, and brandishing a firearm during and in relation both robberies, in December 2014.  The first robbery occurred on December 18, 2014 at a First Merit Bank in Mansfield, Ohio (charged in Counts 1 and 2), and the second robbery occurred on December 30, 2014 at a Fifth Third Bank in North Olmsted, Ohio (charged in Counts 3 and 4).[1]  The trial is scheduled to begin on August 10, 2015.  Dongarra argues that joinder of the two armed robberies in a single

---

[1] Dongarra was initially indicted for the December 30, 2014 robbery on February 25, 2015. A superseding indictment filed June 17, 2015, charged him with both robberies.

indictment was not justified under Fed. R. Crim. P. 8(a) because they are not based on the same act or transaction and there is no allegation that they are connected with a common scheme or plan. He concedes that they are of similar character but asks the Court to sever them for purposes of trial due to unfair prejudice.

**II.**

"In cases involving a single defendant, Rule 8(a) permits joinder of multiple offenses in the same indictment or information if the offenses are 'of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'" *U.S. v. Mohammad*, No. 1:10 CR 389, 2012 WL 4483544, at *2 (N.D. Ohio Sep. 27, 2012) (quoting Fed.R.Crim.P. 8(a)). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *U.S. v. Henderson*, 485 F.Supp.2d 831, 873 (S.D. Ohio 2007) (quoting *United States v. Bullock,* 71 F.3d 171, 174 (5th 1995)).

Even where offenses are properly joined, Rule 14 recognizes that there may be instances where severance is appropriate. *Henderson*, 485 F.Supp.2d at 873. Under Rule 14, a district court has the discretion to sever one or more counts, if joinder "appears to prejudice a defendant . . . ." *Id.* (citing Fed.R.Crim.P. 14).

"In assessing the propriety of severance under Rule 14, the Court must balance the public's interest in avoiding multiple trials with the defendant's interest in a fair trial." *United States v. Goins*, No. 3:09 CR 73, 2009 WL 3713165, at *3 (E.D. Tenn. Nov. 3, 2009) (citing *United States v. Wirsing*, 719 F.2d 859, 864-65 (6th Cir. 1983)). "As a general rule, severance should be granted only if a defendant can show 'substantial,' 'undue,' or 'compelling'

-2-

prejudice." *Id*. (quoting *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) (quoting tests from other Sixth Circuit cases)). "In light of the preference for joint trials, when joinder is proper under Rule 8, a court 'should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id*. (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

### III.

Dongarra argues that joinder of the two armed robberies in a single indictment was not justified under Fed. R. Crim. P. 8(a), and asks the Court to sever Counts 1 and 2 from Counts 3 and 4 for purposes of trial. According to Dongarra, because the two robberies occurred 12 days apart at different banks in two different locations, they are not "based on the same act or transaction." (Doc #: 28, at 3.) The Court agrees, and the government does not dispute that the two robberies were separate acts.

Dongarra also argues that joinder of the robberies in one indictment was improper because there is no allegation that the robberies involved "a common plan or scheme." (Id. at 4.) In opposing this position, the government essentially previewed its entire case against Dongarra. Specifically,

> The evidence at trial will show that Dongarra entered both banks wearing a black ski mask, pointed a handgun in a sideways "gangster" style at bank tellers, and demanded that the tellers place the cash in a plastic trash bag that he was holding, repeatedly ordering them to open additional cash drawers. After each robbery, Dongarra fled the bank in a maroon Oldsmobile Sihouette minivan. Dongarra is alleged to have taken approximately $4,346 in the first robbery, and approximately $13,815 in the second.
>
> While each bank employee will testify to only one discrete robbery, the majority of the government's witnesses will offer testimony relevant to both

-3-

robberies. The government anticipates presenting the testimony of five of Dongarra's associates regarding both bank robberies: his employee, his neighbor, his ex-girlfriend, the person who sold Dongarra the maroon Oldsmobile Silhouette minivan used in both robberies, and a repair shop owner who Dongarra asked to repair the van after the robberies. Three of these witnesses will testify about Dongarra's test drive and purchase of the van on the day before the first robbery. Testimony from two of these witnesses will also establish the whereabouts of both Dongarra and the van shortly before and after both robberies. Specifically, Dongarra called the employee for a ride when his van broke down after the first robbery, and the neighbor helped to repair it the next day. Dongarra drove the van to meet the employee at a local restaurant after the second robbery. In the ensuing days, the neighbor located the van at a repair shop Dongarra was known to frequent. The shop owner will testify that Dongarra dropped the van off the day after the second bank robbery, and asked if the window could be fixed.

Four of these witnesses will link proceeds and other evidence of the robber[ies] to Dongarra. The employee will establish that Dongarra made late payments for her work in cash shortly after each robbery – indeed, within minutes of the second robbery. The neighbor recalled seeing a blanket in the back of Dnogarra's van after the first bank robbery; after his arrest, Dongarra called the neighbor asking him to retrieve the same blanket and other incriminating items from Dongarra's home, which contained cash stained red from the dye pack deployed by bank tellers in the second robbery. Finally, both the neighbor and Dongarra's ex-girlfriend will testify to seeing Dongarra wear both coats that were worn during the robberies.

Additionally, multiple law enforcement witnesses will testify about the government's investigation, including evidence relevant to both robberies that was seized in searches of Dongarra's home, vehicle, and phone. A search of Dongarra's cell phone shows that he made plans to flee [the] area after both bank robberies – traveling to Buffalo, New York, shortly after the first robbery, and apparently planning to go to New Orleans, Louisiana after the second robbery, though thwarted by his arrest before his departure. A search of Dongarra's home revealed both a "for sale" sign and license plate for the Oldsmobile Silhouette used in the robberies, as well as dye-stained cash and bank bands from the second robbery. A search of the Oldsmobile Silhouette yielded a black ski mask, which matched the description of the one used in both robberies and contained Dongarra's DNA.

Finally, consciousness of guilt evidence in the form of Dongarra's recorded jail calls asking about FBI activity at his home and instructing his neighbor to conceal or destroy evidence after Dongarra's arrest applies to both robberies.

(Doc #: 29, at 2-4.) There will therefore be substantial evidence at trial that these robberies were part of a common scheme or plan, thereby justifying their joinder in a single indictment.

Dongarra concedes, as he must, that the robberies are of the same character, but argues that they should be severed for trial because it would be unfairly prejudicial to him. More to the point, he contends that the evidence of both robberies would not be admissible in separate trials under Fed.R. Evid. 404(b); the strength of the evidence in one of the robberies will overtake the weakness of the evidence in the other; the substantial sentence Dongarra faces if convicted weights heavily in favor of prejudice; and trying these charges separately will not offend judicial economy.

The Court rejects Dongarra's contention that the evidence of both robberies would not be admissible in separate trials under Fed. R. Evid. 404(b). Much of the government's evidence falls within permitted uses under Rule 404(b)(2) or exceptions to 404(b); i.e., evidence showing planning and preparation, modus operandi or "signature" evidence, and background evidence. The government expects to introduce evidence showing considerable similarities between the methods employed in both robberies – the black ski mask, the handling of the gun in a "gangster" manner, the types of demands made of the tellers and the use of a trash bag for collecting the money, and escape via the same minivan. Along with the fact that these robberies occurred less than two weeks apart, such evidence constitutes modus operandi or "signature" evidence. *See United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001) ("standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature'" under Rule 404(b)). Evidence that Dongarra purchased the minivan one day before the first robbery, took it to the repair shop after both

-5-

robberies, and planned trips outside the state after both robberies shows planning and preparation – admissible under Rule 404(b)(2).  And the Sixth Circuit has recognized the propriety of using "background" evidence – "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."  *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citations omitted).

The Court also rejects Dongarra's contention that severance is required because the jury might use the stronger evidence relating to the second robbery to infer that he is also guilty of committing the first robbery.  For a defendant to establish substantial prejudice from a "spillover" of evidence, he must show that the jury will not be able to separate and treat as distinct the evidence relating to each count.  *United States v. Murphy*, 836 F.2d 248, 256 (6th Cir. 1988).  However, a jury is presumed capable of sorting out evidence and considering each count separately.  *United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987).  And any prejudice may be cured by limiting instructions.  *United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001).  The Court intends to instruct the jury that it is the jury's duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one; and the jury's decision on one charge, whether it is guilty or not guilty, should not influence its decision on the other charges.

In any event, the government acknowledges that while the presence of red dye stains on cash and other items recovered during searches makes the government's case as to the second robbery stronger, the government has ample evidence of Dongarra's guilt in both robberies.  The government asserts that its witnesses will confirm Dongarra's ownership of the minivan and clothing used in both robberies, as well as his proximity to the banks and possession of large

quantities of cash immediately thereafter. Furthermore, eyewitnesses and video surveillance will confirm the use of a firearm in the same manner in both robberies. And Dongarra's own recorded statements provide inculpatory evidence as to both robberies. For all these reasons, the Court finds this argument meritless.

Dongarra contends that the substantial sentence he faces if convicted weighs heavily in favor of prejudice. However, in a motion for severance, prejudice relates to the effect on a determination of guilt, not punishment. *See Zafiro*, 506 U.S. at 539 (holding that a district court should grant a Rule 14 severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

It is also the Court's conclusion that trying the two robberies separately would offend principles of judicial economy. It would be a waste of judicial resources to try the two robberies separately as many of the witnesses will be providing evidence pertaining to both robberies. Given the heavy burden the defendant bears in convincing the Court to sever the counts, and the general rule against severing them, the Court denies the Motion.

**IV.**

Accordingly, the Motion (**Doc #: 28**) is **DENIED**.

**IT IS SO ORDERED.**

                                       */s/ Dan A. Polster    July 10, 2015*
                                       **Dan Aaron Polster**
                                       **United States District Judge**